UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:25-CR-00084 |
| | ) | |
| GEORGE HERMAN RUTH | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on two of Defendant's objections to the Presentence Report ("PSR"). The first objection is to the PSR at ¶ 96, which applies a two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) for an offense involving ten or more victims [Doc. 52, pg. 1]. The second objection is to ¶ 98, which applies a two-level enhancement under U.S.S.G. § 2B1.1(b)(11)(C)(i) for the use of one means of identification to produce or obtain another [Doc. 52, pg. 7]. For the reasons below, both objections are **OVERRULED**.

I.      **BACKGROUND**

From at least January 2023 through July 2025, the Defendant ran a scheme to defraud the administrators of class action settlements. [Plea Agreement, Doc. 45, ¶ 4(a)]. He submitted hundreds of fraudulent claim forms to those administrators, each form representing that the claimant was entitled to a share of a settlement. *Id.* ¶ 4(r). When an administrator approved a claim, it mailed a settlement check, which the Defendant directed to one of thirteen post office boxes he controlled in east Tennessee or deposited into a checking account he held in the name of a shell entity. *Id.* ¶¶ 4(t), (u), (v), (w). The Defendant pleaded guilty to twenty-five counts of mail fraud. *Id.* ¶ 1.

1

Two features of the scheme bear on the objections before the Court.

First, the settlements operated on a fixed, pro rata basis. A class action settlement establishes a defined sum, and after the payment of fees and costs, eligible class members receive a pro rata share of that sum. *Id.* ¶ 4(o). Because the pool is fixed, every approved claim of Defendant reduced the share available to the remaining claimants. The *Eagle v. Vee Pak, Inc.,* settlement illustrates the mechanics. 343 F.R.D. 552 (N.D. Ill. 2023). The court appointed Company 1 as the administrator and limited eligibility to African American workers denied work through certain staffing agencies between 2011 and 2015. *Id.* ¶¶ 4(cc), (dd). Company 1's claim form asked each claimant to affirm that he was African American and that he had sought work from the relevant agencies during that period. *Id.* ¶ 4(ee). The Defendant submitted at least eleven fraudulent claims to Company 1 alone, affirming on each form that he met those criteria when he did not. *Id.* ¶ 4(ff). Company 1 approved several of those claims and mailed settlement checks in response. *Id.* ¶ 4(gg).

Second, the Defendant populated the claim forms with the names of real people. He mostly used the names of former Major League Baseball players, though he sometimes submitted claims in his own name or in the names of known associates. *Id.* ¶ 4(s). Each successful claim caused an administrator to generate and mail a settlement check written to the name the Defendant had supplied. *Id.* ¶¶ 4(jj)–(nn), (ccc)–(ggg). The twenty-five mailings underlying the counts of conviction each consisted of a check drawn to the name of a former player and mailed to a box the Defendant controlled. *Id.* ¶¶ 4(ii)–(ggg).

The Presentence Report applied a two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) for an offense involving ten or more victims, PSR ¶ 96, and a two-level enhancement under U.S.S.G. § 2B1.1(b)(11)(C)(i) for the use of a means of identification to

2

produce or obtain another means of identification, *id.* ¶ 98. The Defendant objects to both. For the reasons below, both objections are **OVERRULED**.

## II.      NUMBER OF VICTIMS

Section 2B1.1(b)(2)(A)(i) directs a two-level enhancement if the offense "involved 10 or more victims." U.S.S.G. § 2B1.1(b)(2)(A)(i). A "victim" is "any person who sustained any part of the actual loss determined under subsection (b)(1)," as well as "any individual whose means of identification was used unlawfully or without authority." *Id.* cmt. n.1, n.4(E)(ii). Actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 cmt. N.3(A); *see also United States v. Nicolescu*, 17 F.4th 706, 719 (6th Cir. 2021). And "[p]ecuniary harm is 'harm that is monetary or that otherwise is readily measurable in money.'" *United States v. Wala*, 166 F.4th 583, 602 (6th Cir. 2026) (citing U.S.S.G. 2B1.1 at table note (C)(iii)). Whether a given person is a victim is a legal question, and the Government bears the burden of establishing the enhancement by a preponderance of the evidence.

Defendant advances three arguments: that the diluted class members are not victims, that certain bare names cannot count as means of identification, and that the Social Security numbers of Persons 1 through 5 were used as numerical inputs rather than as identifiers. The first argument is dispositive. The diluted class members are victims, and they number well more than ten, so the enhancement applies on that basis alone. The Court addresses the remaining arguments in the alternative.

### A.      The Diluted Class Members Are Victims, and They Number Well More Than Ten.

Each class action settlement created a fixed fund. PSR ¶ 96 n.2. Each fraudulent claim Defendant submitted and the administrator approved drew a share from that fund, leaving less for

the legitimate claimants. The result is a direct, foreseeable monetary harm to those claimants: every dollar Defendant wrongfully took from the fund reduced, dollar for dollar, the money available to the persons the settlement was meant to compensate. This is simple mathematics. Assume the fixed settlement established a fund to pay victims $1,000. Assume there are 10 legitimate class members. That would mean that each victim would be entitled to receive $100. But then comes Defendant who files two fraudulent claims that the administrator approves. Now there are 12 class members and the disbursement to each member is no longer $100 but $83.33. That harm is pecuniary, and it is measurable in money. The harm is no less real because the precise per-claimant figure is not yet calculated. The guideline requires that the harm be "readily measurable in money," U.S.S.G. § 2B1.1 cmt. n.3(A)(iii); it does not require that the Court fix each victim's loss to the penny. "[T]he district court is free to make reasonable inferences from facts in the record when fashioning a sentence." *United States v. Parrish*, 915 F.3d 1043, 1048 (6th Cir. 2019).

The Ninth Circuit confronted this precise scheme and reached this precise conclusion. In *United States v. Mehdi*, the defendant induced class action claims administrators to pay him from settlement funds on fraudulent claims. 511 F. App'x 662 (9th Cir. 2013). The court held that the number-of-victims enhancement was supported because "just one of Mehdi's false class action claims caused 1,974 other claimants to receive reduced awards." *Id.* at 663. The claimants whose award was reduced because of the defendant's fraudulent claims were the victims. The same reasoning governs here. Defendant's claims reduced the awards of the legitimate claimants in each settlement, and those claimants are his victims. The Third Circuit's treatment of an analogous scheme is consistent. In *United States v. Cammarata*, the Third Circuit described the defrauded class members—not the administrators—as the "true victims" of a scheme that diverted settlement funds through fabricated claims. 145 F.4th 345, 374 (3d Cir. 2025).

Defendant's reliance on *United States v. Yagar*, 404 F.3d 967 (6th Cir. 2005), and *United States v. Stubblefield*, 682 F.3d 502 (6th Cir. 2012), is misplaced. Both cases rest on a feature absent here: a third party that absorbed the loss before any individual bore it. In *Yagar*, the defendant deposited stolen checks and withdrew the proceeds, but the affected account holders were promptly reimbursed by their banks. 404 F.3d at 971. The Sixth Circuit held that those account holders were not victims, because "where the monetary loss is short-lived and immediately covered by a third-party, we do not think there has been 'actual loss' or 'pecuniary harm.'" *Id.* That premise does not hold here. No third party has reimbursed the class members for their reduced distributions. Their loss is not short-lived; it is permanent.

*Stubblefield* confirms the point and does not support Defendant's argument. In *Stubblefield*, the defendants cashed counterfeit checks at multiple Wal-Mart stores, and the individual stores took the loss in the first instance. 682 F.3d at 510–12. The Sixth Circuit held that the stores were not victims, because the Wal-Mart corporation reimbursed the individual stores and ultimately bore "the loss from Stubblefield's crimes." *Id.* at 510. The Sixth Circuit found that the Wal-Mart corporation was the single victim. *Id.* at 511 ("[O]nly the corporation suffer[ed] an actual loss— i.e., the 'pecuniary harm that *resulted from the offense*.'") (emphasis in the original). Defendant reads *Stubblefield* to mean that the administrators, who paid the fraudulent claims in the first instance, are the only victims here. But Defendant's argument has turned the analogy upside down. In *Stubblefield*, the loss flowed *up* from many stores to one corporation, so the corporation was the victim. The loss flowed *down* from the administrators, who merely distributed a fixed fund, to the many class members who absorbed the shortfall. The administrators paid out the same fixed pool regardless of Defendant's fraud; they did not bear the ultimate loss like the Wal-Mart corporation

5

did. The class members did. *Stubblefield* identifies the party that sustained the actual loss as the victim, and here that party is the body of legitimate claimants.

The Government need not name each class member or quantify each member's loss to carry its burden. The enhancement turns on the existence of ten or more victims, not on a victim-by-victim accounting. *See United States v. Page*, 163 F.4th 385, 402 (6th Cir. 2025) (where the record clearly establishes the requisite number of victims, the court need not specifically name them before applying the enhancement). The record here establishes that each affected settlement included far more than ten legitimate claimants whose distributions Defendant's fraud reduced, and Defendant does not dispute that each settlement involved more than ten class members. The first factor is therefore satisfied, and the enhancement applies. The Court addresses Defendant's remaining arguments only because he has pressed them.

### B.      The Bare-Name Argument Does Not Alter the Result.

Defendant argues that certain names the PSR counts as means of identification—for example, names that return hundreds of matches in a public directory—cannot identify a specific individual, and so cannot qualify under Note 4(E)(ii) and 18 U.S.C. § 1028(d)(7). He relies on *United States v. Mitchell*, 518 F.3d 230 (4th Cir. 2008), which held that a bare name shared by more than one person may not be "sufficiently unique" to identify a specific individual. *Id.* at 235. *Mitchell* is out-of-circuit authority that the Sixth Circuit has not adopted.  But even if the Court were inclined to follow it and to exclude every contested bare name, the class members identified in Section II.A remain victims. Their status does not depend on the bare-name theory, and the enhancement is satisfied without counting any contested name.

6

**C.   The Social Security Numbers of Persons 1 Through 5 Were Used to Identify Those Persons.**

Defendant's final argument is that the Social Security numbers on the claim forms functioned as numerical verification inputs rather than as identifiers, so that Persons 1 through 5 are not victims under Note 4(E)(ii). He invokes *Dubin v. United States*, 599 U.S. 110 (2023), which held, in construing the aggravated identity theft statute, that a means of identification must be "at the crux" of the criminal conduct rather than "merely an ancillary feature of a billing method." *Id.* at 113. He points to the finding of the SSA Office of Inspector General that each Social Security number on the forms was paired not with the name of its holder, but with a variant of Defendant's own name:

| Claim Form | Name on Form | SSN Assigned To |
|:---:|:---:|:---:|
| 1583 | "George C Ruth" | A.M. |
| 1930 | "George M Ruth" | A.E. |
| 1986 | "Ruth A Gorge" | E.S. |
| 1987 | "Ruth S George" | D.B. |
| 1988 | "Ruth George" | A.M. |
| 1989 | "Ruth E Geeorge" | A.S. |

The Court need not resolve whether *Dubin*'s construction of 18 U.S.C. § 1028A extends to Note 4(E)(ii), because the enhancement applies based on the number of class-members no matter how Persons 1 through 5 are counted. The argument is, in any event, unpersuasive. A Social Security number is a classic means of identification. 18 U.S.C. § 1028(d)(7)(A). Defendant used each number to satisfy the administrators' verification of the claim—that is, to establish that a real, identified person stood behind the claim and was entitled to payment. That use invoked the number's identifying function; it did not bypass it. The contention that the numbers were mere "numerical inputs" divorced from the persons to whom they belong mistakes the role the numbers

played. The verification check exists precisely because the number identifies a specific individual, and Defendant's fraud succeeded only because each number did so. The fraud worked only because each number matched a real identified individual the verification system would accept. So the number's identifying function was not bypassed — it was the very thing the defendant exploited. The *Dubin* "flank-steak" hypothetical cited by Defendant does not help. In the hypothetical, the waiter served flank steak but charged for filet using an electronic payment method. The diner's payment card was only incidental to the waiter's misrepresentation about the food served. The Social Security numbers were the instruments by which Defendant held out fraudulent claims as the valid claims of real, identified persons. Persons 1 through 5 are victims. But the Court does not rest the application of the enhancement on that conclusion, because as noted, the class members are enough to justify applying the enhancement.

## III.  PRODUCTION OF A MEANS OF IDENTIFICATION

Defendant's second objection challenges the two-level enhancement under U.S.S.G. § 2B1.1(b)(11)(C)(i), which applies "[i]f the offense involved . . . the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification." *Id.* The PSR treats the names and Social Security numbers Defendant used as the first means of identification and the unique tracking numbers the administrators assigned to his fraudulent claims as a second. PSR ¶ 98. Defendant contends that he never produced or obtained the tracking numbers, that they are simply the administrators' internal bookkeeping, and that the enhancement therefore does not reach his conduct.

"Produce" "includes manufacture, design, alter, authenticate, duplicate, or assemble." U.S.S.G. § 2B1.1 cmt. n.10(A). "A 'means of identification' includes 'any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual,'

8

including—among other things—his or her name, social security number, birth date, and taxpayer identification number. *United States v. Igboba*, 964 F.3d 501, 513 (6th Cir. 2020) (quoting 18 U.S.C § 1028(d)(7)). The enhancement reaches "affirmative identity theft" or "breeding," in which the offender uses one means of identification to produce or obtain a second. U.S.S.G. § 2B1.1 cmt. n.10(C)(i); *see United States v. Williams*, 355 F.3d 893, 898 (6th Cir. 2003).

### A. The Claim Numbers Are a Second Means of Identification.

The governing authority is *Williams*. There, the defendants used the names and Social Security numbers of others to obtain bank loans. 355 F.3d at 895–96. The Sixth Circuit affirmed the enhancement, holding that because "a bank loan number is an account number that can be used to obtain money," "it is a 'means of identification' as that term is defined in 18 U.S.C. § 1028." *Id.* at 899. The court has since applied *Williams* to facts that mirror this case. In *United States v. Gonzalez*, the defendant submitted false claims to insurance companies seeking reimbursement for procedures purportedly performed on patients. 644 F. App'x 456, 464–65 (6th Cir. 2016). The Sixth Circuit found the enhancement applied, reasoning that "[t]he names of the beneficiaries were the first means of identification" and that "[t]he fraudulent health claims, which bear unique numbers, were the second, or 'other,' means of identification." *Id.* at 465. The Sixth Circuit reached the same result in *United States v. Johnson*, 658 F. App'x 244 (6th Cir. 2016), when the defendant used the identifying information of others to produce tax returns bearing document locator numbers. The personal information was the first means of identification, and the returns with their locator numbers were the second. *Id.* at 247.

Defendant used names and Social Security numbers, the first means of identification, to submit fraudulent claims. The administrators processed those claims and assigned each a unique tracking number, the second means of identification. The numbers are unique to the claims, and

9

the approved claims yielded settlement checks. The structure is the one the Sixth Circuit approved in *Gonzalez*: names used to produce uniquely numbered fraudulent claims, which in turn produced money.

### B. Defendant's Arguments Do Not Defeat the Enhancement.

Defendant's main argument is that he never "obtained" the tracking numbers because he never received, used, or knew them; the numbers, he says, are the administrators' own bookkeeping artifacts. The argument reads into the guideline a requirement the Sixth Circuit has not imposed. The text reaches conduct that operates "to produce or obtain" a second means of identification, and "produce" "includes manufacture, design, alter, authenticate, duplicate, or assemble." U.S.S.G. § 2B1.1 cmt. n.10(A). Neither *Gonzalez* nor *Johnson* turned on whether the defendant personally received or used the second identifier. The defendants in those cases did not receive the claim numbers or the document locator numbers; the institutions generated those numbers internally when they processed the fraudulent submissions, exactly as the administrators did here. The Sixth Circuit nonetheless held that the defendants had produced a second means of identification. Defendant offers no basis on which the tracking numbers differ from the claim numbers in *Gonzalez*.

Defendant next argues that *Williams* turned on the loan number's function as an account number used to access funds, and that a tracking number that merely indexes a claim file performs no such function [Doc. 52, pg. 8]. But in *Gonzalez*, the fraudulent health claims there did not function as account numbers the defendant presented to draw money; they were the administrators' own claim identifiers, generated when the claims were processed. The Sixth Circuit held them sufficient because they were unique numbers attached to fraudulent claims that produced payment. The names of the beneficiaries were the first means of identification and the health claim numbers

10

were the second. *Gonzalez*, 644 F. App'x at 465. The same is true of the tracking numbers here. The approved claims, identified by their unique numbers, produced the settlement checks Defendant sought.

Defendant's reliance on the commentary's exclusions is misplaced for the same reason. The Commission has explained that forging a signature to cash a stolen check, or using a stolen credit card to make a purchase, does not produce a second means of identification. U.S.S.G. § 2B1.1 cmt. n.10(C)(iii)(I), (II). Those examples describe the use of an existing number to complete a single transaction, with nothing new generated. This case is different. Defendant's fraud caused the administrators to create new, unique numbers that did not exist before he submitted his claims. That is the feature the Sixth Circuit found dispositive in *Gonzalez* and *Johnson*, and it removes this case from the check-forgery and credit-card examples Defendant invokes.

Finally, Defendant argues that *Dubin* forecloses the enhancement because the tracking numbers were ancillary to the fraud rather than at its crux. *Dubin* construed the aggravated identity theft statute, 18 U.S.C. § 1028A, and held that a means of identification is used "in relation to" a predicate offense only when the use is "at the crux of what makes the conduct criminal," not when it is merely ancillary. 599 U.S. at 131. The crux of Defendant's fraud was the use of other persons' names and Social Security numbers to misrepresent who was submitting each claim and to establish eligibility for settlement funds. That use went to "who" was involved, not merely to how or when a service was rendered. *Id.* at 132; *see United States v. King*, 126 F.4th 440, 443–44 (6th Cir. 2025). In any event, the guideline requires only that the predicate means of identification— the names and Social Security numbers—be used to produce or obtain a second, and that predicate was central to the fraud, not ancillary to it. Nothing in *Dubin* requires that the produced identifier also lie at the crux of the offense. The Sixth Circuit has confirmed that *Dubin* is consistent with its

11

existing law in this area, *King*, 126 F.4th at 443–44 (citing *United States v. O'Lear*, 90 F.4th 519, 533 (6th Cir. 2024)), and that existing law includes *Gonzalez* and *Johnson*, which control this case.

## IV.  CONCLUSION

The legitimate class members whose pro rata distributions Defendant's fraud reduced are victims under U.S.S.G. § 2B1.1, and they number well more than ten, so the two-level enhancement under U.S.S.G. § 2B1.1(b)(2)(A)(i) applies. The unique numbers the administrators assigned to Defendant's fraudulent claims are a second means of identification produced through his use of the names and Social Security numbers of others, so the two-level enhancement under U.S.S.G. § 2B1.1(b)(11)(C)(i) applies as well. Defendant's objections to PSR ¶¶ 96 and 98 are **OVERRULED**.

**SO ORDERED:**

s/Clifton L. Corker
United States District Judge

12